UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GUILLERMO ESTEVEZ,

                              Plaintiff,

                    -v.-

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

21 Civ. 347 (KPF)

**OPINION AND ORDER
ADOPTING REPORT AND
RECOMMENDATION**

KATHERINE POLK FAILLA, District Judge:

Pending before the Court is the August 12, 2022 Report and

Recommendation from United States Magistrate Judge Valerie Figueredo (the

"Report" (Dkt. #29), attached), regarding the unopposed motion for judgment

on the pleadings filed by Defendant Commissioner of Social Security

("Commissioner").  Judge Figueredo recommends that the Commissioner's

motion for judgment on the pleadings be granted.

The Court has examined the Report and notes that no party has objected

within the fourteen-day period from its service, as provided in 28 U.S.C.

§ 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  For the

reasons set forth below, the Court finds no error in the Report and adopts it in

its entirety.

## BACKGROUND

The relevant facts underlying this action are set forth in the Report (*see*

Report 2-11) and the Certified Administrative Record (*see* Dkt. #13 ("CAR")).

The Court assumes familiarity with such facts and provides only a brief

overview herein.

On June 21, 2018, Plaintiff filed an application for supplemental security income, alleging June 1, 2018, as the onset date of his disability.  (Report 2; CAR 67, 168-75, 254-61).  In his application, Plaintiff identified the following illnesses, injuries, and conditions as the bases for his disability claim: a broken left arm causing "severe pain" and "problems," depression, anxiety, nervousness, stress, and diabetes.  (CAR 168-69).  Plaintiff's application was denied on September 27, 2018.  (*Id.* at 67).  Thereafter, Plaintiff filed a written request for a hearing before an Administrative Law Judge (or "ALJ"), which the ALJ received on November 27, 2018.  (*Id.*).

On January 29, 2020, Plaintiff appeared by video before ALJ Michael McKenna for a hearing on his application.  (CAR 67, 79).  On June 19, 2020, the ALJ found that Plaintiff was not disabled.  (*Id.* at 64-79).  Specifically, the ALJ found that while Plaintiff had not engaged in substantial gainful activity since June 21, 2018, the date he filed his application, and while he has severe impairments — including coronary artery disease and arthrosclerosis of the legs — that significantly limit his ability to perform basic work activities, Plaintiff does *not* have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 69-72).  Applying the Medical-Vocational Guidelines (the "Grids"), the ALJ concluded that Plaintiff has the residual functional capacity to perform the full range of light work, and therefore that a finding of "not disabled" is appropriate.  (*Id.* at 78-80).  On December 11, 2020, the Appeals Council of the Social Security Administration denied Plaintiff's

request for review.  (*Id.* at 1-6).  Thus, the ALJ's decision is the Commissioner's final decision, which is reviewable by this Court.  20 C.F.R. §§ 404.981, 416.1581; 42 U.S.C. § 405(g).

On January 13, 2021, Plaintiff filed the instant complaint seeking review of the decision of the ALJ pursuant to § 205(g) and/or § 1631(c)(3) of the Social Security Act, *as amended*, 42 U.S.C. §§ 405(g), 1383(c)(3).  (Dkt. #2).  On February 4, 2021, the Court referred this case to United States Magistrate Judge Debra C. Freeman for a report and recommendation on any motion for judgment on the pleadings.  (Dkt. #8).  On December 1, 2021, after Judge Freeman granted the Commissioner two extensions of time to file its motion (Dkt. #12, 16), the Commissioner filed a motion for judgment on the pleadings and a supporting memorandum of law (Dkt. #18, 19).  The Commissioner argued principally that the ALJ's decision applied the correct legal standard and was supported by substantial evidence.  (Dkt. #19 at 11-19).

On April 30, 2022, this action was redesignated to Judge Figueredo. (*See* Docket Entry for April 30, 2022).  On May 3, 2022, Plaintiff filed a letter requesting an extension of time to file his opposition to the Commissioner's motion for judgment on the pleadings, noting that he was awaiting the results of a "new test that was done to [him]."  (Dkt. #23).  On May 5, 2022, Judge Figueredo granted Plaintiff an extension to June 6, 2022.  (Dkt. #24).  On July 19, 2022, this Court issued an Order observing that Plaintiff had neither opposed the Commissioner's motion nor filed a cross-motion for judgment on

the pleadings, such that the Court considered there to be a single unopposed motion for judgment on the pleadings in this matter.  (Dkt. #28).

Judge Figueredo issued the Report on August 12, 2022.  (*See generally* Report).  In her comprehensive, 34-page opinion, Judge Figueredo agreed with the Commissioner that the ALJ's evaluation of the medical opinions in the record was supported by substantial evidence, as were the ALJ's findings with respect to residual functional capacity and credibility.  (*See id.* at 24-34).  She accordingly recommended that the Court grant the Commissioner's motion for judgment on the pleadings.  (*Id.* at 34).  Objections to the Report were due on or before August 26, 2022.  (*Id.* at 35).  Neither party objected to the Report.

## DISCUSSION

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Grassia* v. *Scully*, 892 F.2d 16, 19 (2d Cir. 1989).  A court may also accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous.  *See Ramirez* v. *United States*, 898 F. Supp. 2d 659, 663 (S.D.N.Y. 2012) (citation omitted).  A magistrate judge's decision is clearly erroneous only if the district court is "'left with the definite and firm conviction that a mistake has been committed.'"  *Easley* v. *Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "A party's failure to object to a report and recommendation, after receiving clear notice of the consequences of such a failure, operates as a waiver of the party's

4

right both to object to the report and recommendation and to obtain appellate review." *Grady* v. *Conway*, No. 11 Civ. 7277 (KPF) (FM), 2015 WL 5008463, at *3 (S.D.N.Y. Aug. 24, 2015) (citing *Frank* v. *Johnson*, 968 F.2d 298, 300 (2d Cir. 1992)).

Because Plaintiff has not filed an objection to the Report, he has waived his right to object and to obtain appellate review. Even so, the Court has reviewed the Report and finds that its reasoning is sound, and that it is grounded in fact and law. Having reviewed the record, the Court finds no error, much less clear error, and adopts the Report in its entirety.

## CONCLUSION

The Court has thus reviewed the Report for clear error and finds none. To the contrary, the Court agrees with Judge Figueredo's well-reasoned Report and hereby adopts its reasoning by reference. Accordingly, it is hereby ordered that the Commissioner's motion for judgment on the pleadings is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. The Clerk of Court is further directed to mail a copy of this Order to Plaintiff at the address reflected on the docket.

SO ORDERED.

Dated:       September 2, 2022
              New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #: _____          │
│ DATE FILED:___ 8/12/2022 ___    │
└─────────────────────────────────┘
```

--------------------------------------------------------------------X

GUILLERMO ESTEVEZ,

                                        Plaintiff,          21-CV-347 (KPF) (VF)

                    -against-                               **REPORT AND
                                                           RECOMMENDATION**

KILOLO KIJAKAZI,
Acting Commissioner of Social Security

                                        Defendant.

--------------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO THE HONORABLE KATHERINE POLK FAILLA, United States District Judge**

    Plaintiff Guillermo Estevez, proceeding *pro se* and *in forma pauperis*, brings this action

pursuant to 42 U.S.C. § 405(g). Plaintiff seeks judicial review of a final determination by

Defendant, the Acting Commissioner ("Commissioner") of the Social Security Administration

("SSA")[1], denying Plaintiff's application for Supplemental Security Income ("SSI") under Title

XVI of the Social Security Act (the "Act") based on a finding that he is not disabled for purposes

of entitlement to SSI. Before this Court is the Commissioner's unopposed motion for judgment on

the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set

forth below, I respectfully recommend that the Commissioner's motion be **GRANTED**.

---

[1] The named defendant when this action commenced was Andrew Saul, then-
Commissioner of the SSA. On July 9, 2021, Kilolo Kijakazi became Acting Commissioner of the
SSA, and is therefore substituted as named defendant. See Fed. R. Civ. P. 25(d) (permitting
automatic substitution of a party who is a public official sued in his official capacity when the
public official "ceases to hold office" while a suit is pending).

## BACKGROUND

**A.  Procedural History**

On June 21, 2018, Plaintiff filed an application for SSI, alleging June 1, 2018, as the onset date of his disability. SSA Administrative Record ("R.") (ECF No. 13) at 67, 168-175, 254-61. When Plaintiff applied for SSI benefits in 2018, he listed "problems" and "severe pain" with his "left broken arm," depression, anxiety, nervousness, stress, and diabetes, as his physical and mental impairments. Id. at 168-69. Based on his hearing testimony, discussed in detail below, Plaintiff also suffers from high blood pressure, cardiac issues, circulatory issues, back pain, kidney problems, and liver problems. Id. at 128-38, 144-55. Plaintiff's claim for SSI benefits was denied on September 27, 2018, and on November 27, 2018, Plaintiff filed a written request for a hearing before an administrative law judge. Id. at 67, 167, 188-90. On October 19, 2019, Plaintiff appeared by video before Administrative Law Judge Michael McKenna (hereinafter, the "ALJ"). Id. at 110-122. At that time, Plaintiff provided the ALJ with recent medical records to supplement his file, and the ALJ had Plaintiff sign a medical release form enabling the ALJ to request and obtain additional medical records from Plaintiff's doctors concerning recent surgeries and treatment. Then, the hearing was adjourned to provide Plaintiff time to seek legal representation. See id.

On January 19, 2020, Plaintiff, without legal representation, appeared by video for another hearing before the ALJ. See id. at 124-166. On June 19, 2020, the ALJ issued his written decision, denying Plaintiff's claim and finding that Plaintiff has not been under a disability within the meaning of the Act since June 21, 2018 (the date the application was filed). Id. at 64-83. Plaintiff requested a review by the SSA Appeals Council (submitted on August 14 and received on August 17, 2020), which was denied on December 11, 2020. Id. at 1-6, 252-53. That denial made the June 19, 2020 decision of the ALJ the final action of the Commissioner. See Lesterhuis v. Colvin, 805 F.

2

3d 83, 87 (2d Cir. 2015) (per curiam) ("If the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision.") (citation omitted).

On January 13, 2021, after exhausting his administrative remedies, Plaintiff, proceeding *pro se* and *in forma pauperis*, commenced the instant action seeking judicial review of the ALJ's decision, requesting that this Court modify or reverse the decision and grant Plaintiff maximum monthly SSI benefits as allowable under the Act. See ECF No. 2. On August 9, 2021, the Commissioner filed the Administrative Record, which constituted her answer. ECF No. 13. Thereafter, on December 1, 2021, the Commissioner moved for judgment on the pleadings and submitted a memorandum of law in support of her motion, requesting that this Court affirm the ALJ's decision. ECF Nos. 18-19.

On March 24, 2022, the Honorable Debra Freeman issued an order directing Plaintiff to file his opposition to the Commissioner's motion no later than April 15, 2022. ECF No. 22. The order instructed Plaintiff that if he "has any difficulty meeting the April 15, 2022 deadline, then he should request an extension" and "cautioned that [Plaintiff's] failure to respond to Defendant's motion or to request an extension by April 15, 2022, may result in the Court's resolution of his claims on the basis of Defendant's submissions alone, or may result in the dismissal of his case for failure to prosecute." Id. (emphasis in original). On May 3, 2022, Plaintiff submitted a letter requesting an extension. ECF No. 23. On May 5, 2022, this Court issued an order directing Plaintiff to file his opposition no later than June 6, 2022. ECF No. 24. To date, the Commissioner's motion remains unopposed. On July 19, 2022, the Honorable Katherine Polk Failla entered an order stating that the Court "consider[ed] there to be a single [unopposed] motion for judgment on the pleadings in this matter" and would resolve the motion accordingly. ECF No. 28.[2]

---

[2] A copy of each order (ECF Nos. 22, 24 and 28) was mailed to Plaintiff at his last known address, listed on the docket.

3

B. **The Hearing Before the ALJ**

The hearing was held before ALJ Michael McKenna in Hartford, Connecticut on January 29, 2020. R. at 124-66. Plaintiff, unrepresented by counsel, appeared via video conference from New York, New York. Id. at 67, 126. Vocational Expert ("VE") Bethany Pyro also participated in the hearing by telephone. Id. At the time of the hearing, Plaintiff was 49 years old. Id. at 168.

At the hearing, Plaintiff informed the ALJ that since October 2019, he had been hospitalized for two surgeries: (1) emergency heart surgery in November 2019; and (2) surgery "because of [a] blood clot" in his left leg in January 2020, requiring Plaintiff to receive stents. Id. at 128, 130. Plaintiff testified that he has had other surgeries "to deal with this blood clot since 2019" and was "supposed to have another surgery on [his] right leg next month." Id. at 128. Plaintiff explained that he was being treated "by an interventional cardiologist." Id. Plaintiff further testified that he had been seeing a therapist every week since November 2018, and was prescribed medication to treat his anxiety and depression. Id. Plaintiff provided the ALJ with various medical records, including but not limited to, a medication list, paperwork regarding his recent heart and blood clot surgeries, and a letter from his therapist. Id. at 129-30. The ALJ told Plaintiff that the records would be added to Plaintiff's file, and that following the hearing, his office would request additional records from New York Presbyterian, the hospital where Plaintiff had his heart surgery. Id. at 132, 137-38.

The ALJ explained to Plaintiff the general procedure for the hearing, including the five-step process used to determine whether or not an individual is disabled under the law. Id. at 133-37. The ALJ began by asking Plaintiff about his education and work history. Plaintiff told the ALJ that he received his Associate Degree in security management in 2005, and while taking classes, worked part-time at Interboro Institute for approximately two years (2003-2005). Id. at 141-42. Plaintiff has not had any other educational or vocational training. Id. at 141. Plaintiff previously worked as a

4

packer for Nitro Logistics in 2018 for "a month or two," where he worked in a warehouse, "stacking and lifting boxes." Id. at 142, 154. Plaintiff testified that the only work he has had between 2005 and 2018 was at grocery stores (full-time for about a year, and otherwise part-time). Id. 142-43. Based on this information, the ALJ made a finding that the Plaintiff has no past relevant work. Id. at 143.

The ALJ then asked Plaintiff to list the impairments that prevented him from being able to work. Plaintiff testified that he could not work due to his diabetes, high blood pressure (i.e., hypertension), cardiac issues (specifically, a recent heart surgery), circulatory issues including blood clots in his legs (requiring several angioplasty procedures placing stents in his legs), back pain from arthritis, kidney problems, and liver problems. Id. at 144-45. Plaintiff testified that he takes Jardiance and Januvia for his diabetes, checks his blood sugar levels regularly, takes Metroprolol for his hypertension, and was recently prescribed a water pill for his kidneys. Id. at 146-47. Plaintiff explained that his diabetes and hypertension, and the medications noted above, caused him headaches (four to five a week) and to use the bathroom often (approximately once an hour, including while sleeping). Id. at 146-49, 157.

Plaintiff testified that he recently had bypass surgery and that his cardiologist had advised him not to lift more than 10 pounds. Id. at 149-50, 153-54. Plaintiff further testified that due to his circulatory issues, he could not stand for longer than 10 to 15 minutes or walk for more than "a block or so" without pain. Id. at 150-51. Plaintiff has felt this pain for years and has had multiple surgeries to have stents put in his legs. Id. at 151. Plaintiff also testified that he has upper back pain caused by arthritis, for which he attends physical therapy three times per week, beginning in December 2019. Id. at 151-52. Plaintiff's back pain causes him to have trouble lifting and carrying things. Id. at 153. Finally, Plaintiff testified that he has kidney and liver problems, but that his kidney problems do not give him pain.  Id. at 154-55. In addition, at the time of the hearing,

Plaintiff lived alone and received assistance from Adult Protective Services to clean his home. Id. at 140, 155. Plaintiff testified that he could prepare sandwiches and travel on public transportation, but only left his home for appointments. Id. at 140, 156-57, 159.

After finding the VE to be qualified,[3] the ALJ asked the VE hypotheticals. Id. at 160-64. First, the ALJ asked the VE to consider an individual of the Plaintiff's age, education, and work history with the ability to perform the full range of "medium" work. Id. at 161. The VE testified that such a person could find work in the national economy, including as a janitor (Dictionary of Occupational Titles ("DOT") 381.687-018), grocery bagger (DOT 920.687-014), and hand packer (DOT 930.567-018). Id. at 161-62. The ALJ then asked the VE about the same individual but with the ability to perform the full range of "light work." Id. at 163. The VE testified that such a person could find work in the national economy, including as a cashier (DOT 211.462-010), marker (DOT 209.587-034), and cafeteria attendant (DOT 311.677-010). Id. The VE testified that such an individual could perform these jobs even if limited to simple, routine tasks. Id. However, the VE testified that such a person who was absent from work two times per month would be unable to perform these jobs, as "absenteeism of one to two times per month on a consecutive basis would not be tolerated by most employers." Id. at 164. Moreover, the VE testified that an individual who was only able to "stand and walk two hours in an eight hour day and sit for two hours in an eight hour day" would also be unable to perform those occupations. Id.

---

[3] Bethany Pyro has a Master's Degree and a Certificate in Advanced Graduate Studies in Rehabilitation Counseling, is a nationally certified rehabilitation counselor, and has over 20 years of experience "informing on vocational analysis, transferrable field analysis, labor market surveys, [and] vocational research on the job placement assistance to individuals with disabilities." R. at 160-61.

**C.  Medical Evidence**

The Commissioner's memorandum in support of its motion for judgment on the pleadings provides a summary of the medical evidence contained in the administrative record. See Def.'s Mem. at 3-6. As noted, Plaintiff did not oppose the motion and thus has not disputed the Commissioner's summary. Having examined the record, I find that the Commissioner has accurately stated the contents of the administrative record. I thus adopt the Commissioner's summary as complete for the purposes of the issues raised in this action. See Samuels v. Comm'r of Soc. Sec., No. 16-CV-5507 (NSR) (LMS), 2019 WL 2526943, at *2 (S.D.N.Y. May 21, 2019), report and recommendation adopted, 2019 WL 2524843 (S.D.N.Y. June 19, 2019) (adopting the medical records summary as set forth by the Commissioner's unopposed motion for judgment on the pleadings). The issues in this case center around the manner in which the ALJ applied the law to the facts, as well as the extent to which his decision was supported by substantial evidence. I discuss the medical evidence in the record below to the extent necessary to address those issues.

**D.  Medical Opinion Evidence**

    1.  Dr. Aurelio Salon's Consultive Examination

Dr. Salon examined Plaintiff on August 7, 2018. R. at 363. Dr. Salon reported that Plaintiff suffers from diabetes and "intermittent" left arm pain due to a broken arm that occurred in 1981, when Plaintiff was hit by a car. Id. Dr. Salon noted that Plaintiff denied having a history of high blood pressure, heart attack, other heart disease, asthma, emphysema, or seizures. Id. Plaintiff communicated that he was able to cook, clean, do laundry, shop, shower, bathe, dress himself, watch television, and read. Id.

Dr. Salon performed a physical examination, which showed that Plaintiff appeared to be in no acute distress, had normal gait and stance, could walk on heels and toes without

difficulty, could squat fully, used no assistive device, needed no help changing for the examination, needed no help getting on and off the exam table, and was able to rise from a chair without difficulty. Id. at 364. Plaintiff's chest and lungs were normal, with regular heart rhythm and no murmur, gallop, or "rub audible." Id. Plaintiff's cervical and lumbar spine showed full flexion, extension, lateral flexion, and full rotary movement bilaterally, and he showed no scoliosis, kyphosis, or abnormality in the thoracic spine. Id. His extremities showed normal pulses, with no cyanosis, clubbing, edema, muscle atrophy, or significant varicosities or trophic changes. Id. at 365.

A neurological exam was also conducted, which showed sensory deficit, and 5/5 strength in the upper and lower extremities. Id. at 364. His hand and finger dexterity was intact with 5/5 bilateral grip strength. Id. at 365. An X-ray of Plaintiff's left shoulder showed "[n]o acute bony abnormality," and an X-ray of his left humerus and elbow showed "exostosis" but "no evidence of acute fracture, dislocation, or destructive bony lesion;" the X-ray also showed that "[t]he joint spaces [were] relatively well maintained." Id. at 367-68. Dr. Salon's "medical source statement" opined that "[o]n the basis of the history and physical just performed, there are no objective findings to support the fact that [Plaintiff] would be restricted in his ability to sit or stand, or in his capacity to climb, push, pull, or carry heavy objects." Id. at 365.

2.   Dr. Arlene Rupp-Goolnick's Psychiatric Consultive Examination

Dr. Rupp-Goolnick examined Plaintiff on August 7, 2018. Id. at 370. The "background information" notes that Plaintiff, then 47 years old, lived alone and took public transportation to the evaluation, travelling a distance of almost eight miles. Id. Plaintiff reported no history of psychiatric hospitalizations. Id. Plaintiff indicated that he had received outpatient treatment with a therapist in 1981 after being hit by a car, but had stopped going to the therapist that year and was not currently seeing a therapist. Id. Dr. Rupp-Goolnick noted that Plaintiff had

diabetes and bronchitis. Id. At the examination, Plaintiff stated that he had difficulty falling

asleep, poor appetite, depressive symptoms, and some short-term memory deficits. Id. at 370-

71. Plaintiff denied having suicidal or homicidal ideation, manic symptoms, thought disorder,

or panic attacks. Id. Plaintiff also denied any history of drug or alcohol abuse. Id. at 371.

Following a mental-health examination, Dr. Rupp-Goolnick reported that Plaintiff was

cooperative, his manner of relating was adequate, he had normal motor behavior, slouched

posture, was well groomed, his mode of dress and eye contact were appropriate, his speech

was fluent and intelligible, his expressive and receptive language were adequate, his thought

processes were coherent and goal directed with "no evidence of hallucinations, delusions, or

paranoia," and his mood was "tired." Id. Dr. Rupp-Goolnick further reported that Plaintiff's

attention, concentration, and memory were intact, his cognitive functioning was average, and

his insight and judgment were good. Id. at 372. Plaintiff communicated that he was able to

dress, bathe, groom himself, cook and prepare food, do general cleaning, do laundry, shop,

manage money, and take public transportation independently. Id. Plaintiff also stated that he

does not drive, has no friends, and his family lives far away, though they speak on the phone.

Id.

Dr. Rupp-Goolnick opined that there was no evidence of limitations in Plaintiff's

ability to "understand, remember, and apply simple and complex directions and instructions,

us[e] reason and judgment to make work-related decisions, interact adequately with

supervisors, coworkers, and the public, sustain[] concentration, and perform[] a task at a

consistent pace, sustain[] an ordinary routine and regular attendance at work, regulat[e]

emotions, control[] behavior, and maintain[] well-being, maintain[] personal hygiene,

appropriate attire, and [have] awareness of normal hazards, and take[] appropriate

precautions." Id. According to Dr. Rupp-Goolnick, Plaintiff "did not meet [the] criteria for any

DSM-V diagnosis" and there was "no evidence of psychiatric impairment." <u>Id.</u> 373. Dr. Rupp-Goolnick recommended medical follow up and vocational training, but opined that Plaintiff would be able to manage his own funds and that the examination did not indicate that treatment was needed. <u>Id.</u>

### 3. Dr. D. Brown's Opinion (State Agency Psychological Consultant)

Dr. Brown's evaluation, dated August 22, 2018, consisted of reviewing available records and assessing Plaintiff's psychological limitations. <u>Id.</u> at 172. Dr. Brown opined that the evidence did not establish a "mental medically determinable impairment," explaining that Plaintiff had no history of psychiatric hospitalizations or treatment and no current mental-health services or medications. <u>Id.</u> at 172. Dr. Brown noted that Plaintiff "only seemed to report some approp[riate] sadness" at his consultative examination, his mental-status examination was within normal limits, and his activities of daily living were intact. <u>Id.</u> Dr. Brown opined that Plaintiff "did not meet the criteria for any DSM 5 diagnosis." <u>Id.</u>

### 4. Dr. V. Cincore's Opinion (State Agency Medical Consultant)

Dr. Cincore's evaluation, dated September 24, 2018, consisted of reviewing available records and assessing Plaintiff's physical limitations. <u>Id.</u> at 171. Dr. Cincore opined that Plaintiff had no physical limitations. <u>Id.</u> Dr. Cincore explained that Plaintiff's diabetes was under control with medication, an X-ray of his left humerus showed exostosis but Plaintiff exhibited full range of motion in his musculoskeletal exam, and no physical limitations were noted at Plaintiff's physical examination. <u>Id.</u>

### 5. Dr. Yoshifumi Naka's Post-Surgery Report

Dr. Naka, the surgeon who performed Plaintiff's heart surgery on November 20, 2019, rendered a report on November 27, 2019. <u>Id.</u> at 592-93. Dr. Naka opined that, in the aftermath of the surgery, Plaintiff should avoid heavy lifting and strenuous activity. <u>Id.</u> at 592.

10

Dr. Naka also recommended walking as tolerated, noting that Plaintiff should walk "more and more as [he] feel[s] able, increasing both distance and time," and that he should follow the program provided by his physical therapist. Id.

    6. Dr. Richard Schultzer's Questionnaire (Vascular Surgeon)

   Dr. Schultzer completed an impairment questionnaire on December 17, 2019. Id. at 530-35. Dr. Schultzer checked off boxes indicating that Plaintiff's ability to lift, carry, stand, walk, and sit were not affected by his impairment. Id. at 530. However, Dr. Schultzer also checked off boxes indicating that Plaintiff could occasionally and frequently lift and carry only 10 pounds.[4] Id. In addition, Dr. Schultzer checked off boxes indicating that Plaintiff had no limitations in the following areas: understanding and memory; ability to sustain concentration and persistence; social interaction; adaptation; reaching; handling; fingering; and feeling. Id. at 532-33. Dr. Schultzer also checked boxes indicating that Plaintiff had no suicidal features and that he was capable of "handling any payment benefits." Id. at 532. Finally, Dr. Schultzer checked a box indicating that Plaintiff did not have "any other capabilities affected by the impairment." Id. at 534.

## DISCUSSION

### A. Legal Standards

    1. Judgment on the Pleadings

   A Rule 12(c) motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual

---

[4] The form contains separate boxes to check, indicating the weight that Plaintiff could "occasionally" and "frequently" lift. The choices are "less than 10 pounds," "10 pounds," "20 pounds," "50 pounds or more," and "100 pounds or more." Dr. Schultzer checked the "10 pounds" box for both the "occasionally" and "frequently" sections of the form.

matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal

quotation marks and citation omitted). A *pro se* litigant's pleadings and submissions must be

construed liberally and interpreted "to raise the strongest arguments that they suggest." Triestman

v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).

"In the context of a Social Security benefits appeal, if a motion for judgment on the

pleadings is unopposed, the Court may not grant the unopposed motion based merely upon the

opposing party's failure to respond; rather, the Court 'must review the record and determine

whether the moving party has established that the undisputed facts entitle it to judgment as a matter

of law.'" Mitchell v. Berryhill, No. 15-CV-6595 (PED), 2017 WL 2465175, at *6 (S.D.N.Y. June

7, 2017) (quoting Martell v. Astrue, No. 09-CV-1701, 2010 WL 4159383, at *2, n.4 (S.D.N.Y. Oct.

20, 2010); Polanco v. Comm'r of Soc. Sec., 304 F. Supp. 3d 345, 356 (S.D.N.Y. 2018) ("Where, as

here, the Court is presented with an unopposed motion, it may not find for the moving party

without reviewing the record and determining whether there is a sufficient basis for granting the

motion."); Wellington v. Astrue, No. 12-CV-3523 (KBF), 2013 WL 1944472, at *2 (S.D.N.Y. May

9, 2013) (recognizing the court's obligation to review the record before granting an unopposed

motion). Thus, "[e]ven though a motion for judgment on the pleadings is unopposed, the Court

does not embrace default judgment principles in resolving the motion." Negron ex rel. M.C.N. v.

Comm'r of Soc. Sec., No. 11-CV-8685 (KBF), 2013 WL 2896845, at *4 (S.D.N.Y. June 12, 2013)

(citing Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004)).

2.   Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the

district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C.

§ 405(g). A court reviewing a final decision by the Commissioner "is limited to determining

whether the [Commissioner's] conclusions were supported by substantial evidence in the record

and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013)

(per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d

370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive").

Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389,

407 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802

F.3d at 374-75; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means—and means

only—such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation

marks omitted). "Under the substantial-evidence standard, a court looks to an existing

administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's

factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for

such evidentiary sufficiency is not high." Id. In weighing whether substantial evidence exists to

support the Commissioner's decision, "the reviewing court is required to examine the entire record,

including contradictory evidence and evidence from which conflicting inferences can be drawn."

Selian, 708 F.3d at 417 (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)).

The substantial evidence standard is a "very deferential standard of review." Brault v. Soc.

Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to

substitute its own judgment for that of the Commissioner, even if it might justifiably have reached

a different result upon a de novo review." DeJesus v. Astrue, 762 F. Supp. 2d 673, 683 (S.D.N.Y.

2011) (quoting Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and

alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a

reasonable factfinder would have to conclude otherwise.'" Brault, 683 F.3d at 448 (quoting Warren

13

v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted). "Even where the administrative

record may also adequately support contrary findings on particular issues, the ALJ's factual

findings must be given conclusive effect so long as they are supported by substantial evidence."

Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks

omitted); see also Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008).

### 3. Commissioner's Determination of Disability

The Social Security Act defines the term "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A).

Physical or mental impairments must be "of such severity that [the claimant] is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§

423(d)(2)(A), 1382c(a)(3)(B). In assessing a claimant's impairments and determining whether they

meet the statutory definition of disability, the Commissioner "must make a thorough inquiry into

the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to

be broadly construed and liberally applied.'" Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983) (per curiam) (quoting Gold v. Sec'y of H.E.W., 463 F.2d 38, 41 (2d Cir. 1972)). The

Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical

opinions based on such facts; (3) subjective evidence of pain or disability testified to by the

claimant or others; and (4) the claimant's educational background, age, and work experience."

Mongeur, 722 F.2d at 1037 (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir.

1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]" Estrella v. Berryhill, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 416.920(a)(4). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). Second, if the claimant is unemployed, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. § 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 416.920(c). Third, if the claimant has such an impairment, the Commissioner considers whether the medical severity of the impairment "meets or equals" a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. § 416.920(a)(4)(iii), 416.920(d). If so, the claimant is considered disabled. Id.

If the claimant alleges a mental impairment, the Commissioner must apply a "special technique" to determine the severity of the claimant's impairment at step two, and to determine whether the impairment satisfies Social Security regulations at step three. See 20 C.F.R § 416.920a; see also Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). "If the claimant is found to have a 'medically determinable mental impairment,' the [Commissioner] must 'specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s),' then 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of [Section 416.920a],' which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021 WL 4392986, at *18 (S.D.N.Y. Sept. 24, 2021) (quoting 20 C.F.R. §§ 416.920a(b), (c)(3)). "The functional limitations for these first three areas are rated on a five-point scale of none, mild, moderate, marked, or

extreme, and the limitation in the fourth area (episodes of decompensation) is rated on a four-point

scaled of none, one or two, three, or four or more." Id.

Fourth, if the claimant's impairment does not meet or equal a listed impairment, the

Commissioner continues to the fourth step and determines whether the claimant has the residual

functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §

416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. §

416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the

Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work

experience, permits the claimant to do other work. Id. § 416.920(a)(4)(v). If the claimant cannot

perform other work, he or she will be deemed disabled. Id. § 416.920(a)(4)(v).

The claimant has the burden at the first four steps. Burgess v. Astrue, 537 F.3d 117, 128 (2d

Cir. 2008). If the claimant is successful, the burden shifts to the Commissioner at the fifth and final

step, where the Commissioner must establish that the claimant has the ability to perform some

work in the national economy. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per

curiam).

<u>Evaluation of Medical Opinion Evidence</u>

"Regardless of its source, the ALJ must evaluate every medical opinion in determining

whether a claimant is disabled under the [Social Security] Act." Pena ex rel. E.R. v. Astrue, No.

11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §

416.927(d)) (internal quotation marks omitted). For SSI applications filed before March 27, 2017,

the SSA's regulations required application of the "treating physician rule," which required an ALJ

to give more weight to the opinions of physicians with the most significant relationship with the

claimant. See 20 C.F.R. § 416.927(d)(2); see also Taylor v. Barnhart, 117 F. App'x 139, 140 (2d

Cir. 2004). Under the treating physician rule, an ALJ was required to provide her reasoning if she

16

determined that a treating physician's opinion was not entitled to "controlling weight," or at least "more weight," than the opinions of non-treating and non-examining sources. Gonzalez v. Apfel, 113 F. Supp. 2d 580, 588-89 (S.D.N.Y. 2000). In addition, under the treating physician rule, a consultative physician's opinion was generally entitled to "little weight." Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009).

On January 18, 2017, the SSA published comprehensive revisions to the regulations regarding the evaluation of medical evidence for applications filed on or after March 27, 2017 (such as Plaintiff's application in this case). See Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5869-70, 2017 WL 168819 (Jan. 18, 2017). "In implementing new regulations, the SSA has apparently sought to move away from a perceived hierarchy of medical sources." Velasquez, 2021 WL 4392986, at *19 (citing 82 Fed. Reg. 5844). The new regulations state that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."[5] 20 C.F.R. §416.920c(a); see also Young v. Kijakazi, 20-CV-03606 (SDA), 2021 WL 4148733, at *9 (S.D.N.Y. Sept. 13, 2021). Instead, an ALJ must consider all medical opinions in the record and "evaluate the persuasiveness" based on five "factors": (1) supportability; (2) consistency; (3) relationship with the claimant; (4)

---

[5] The new regulations define "prior administrative medical finding" as: a "finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, including but not limited to: (i) The existence and severity of your impairment(s); (ii) The existence and severity of your symptoms; (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) If you are an adult, your [RFC]; (v) Whether your impairment(s) meets the duration requirement; and (vi) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim." 20 C.F.R. § 416.913(a)(5).

specialization; and (5) any "other" factor that "tend[s] to support or contradict a medical opinion." 20 C.F.R. § 416.920c(a)-(c).

Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. § 416.1520c(a)-(b). Under the new regulations, the ALJ must "explain," in all cases, "how [she] considered" both the supportability and consistency factors, as they are "the most important factors." Id. § 416.920c(b)(2); see also Young, 2021 WL 4148733, at *9 (describing supportability and consistency as "the most important" of the five factors); Amber H. v. Saul, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *4 (N.D.N.Y. May 24, 2021) (noting that the two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," the "same factors" that formed the foundation of the treating physician rule). With respect to the supportability factor, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." Vellone v. Saul, No. 20-CV-261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. § 416.920c(c)(1)); see Rivera, 2020 WL 8167136, at *16 (noting that supportability "has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support [his or] her opinion") (quoting 20 C.F.R. § 416.920c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." Vellone, 2021 WL 319354, at *6 (citing 20 C.F.R. § 416.920c(c)(2)).

As to the three remaining factors—relationship with the claimant, specialization, and "other"—the ALJ is required to consider, but need not explicitly discuss, them in determining the persuasiveness of the opinion of a medical source. 20 C.F.R. § 416.920c(b)(2). If the ALJ finds two or more medical opinions to be equally supported and consistent with the record, but not identical,

the ALJ must articulate how she considered the three remaining factors. See id. § 416.920c(b)(3);

see also Velasquez, 2021 WL 4392986, at *20. Thus, "[a]lthough the new regulations eliminate the

perceived hierarchy of medical sources, deference to specific medical opinions, and assigning

'weight' to a medication opinion, the ALJ must still 'articulate how [she] considered the medical

opinions' and 'how persuasive [she] find[s] all of the medical opinions.'" Andrew G. v. Comm'r of

Soc. Sec., No. 3:19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (citations

omitted). "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases

[his] explanation upon a misreading of the record, remand is required." Rivera, 2020 WL 8167136,

at *14 (quoting Andrew G., 2020 WL 5848776, at *9).

Courts considering the application of the new regulations have concluded that "the factors

are very similar to the analysis under the old [treating physician] rule." Velasquez, 2021 WL

4392986, at *20 (quoting Dany Z. v. Saul, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)); see also

Acosta Cuevas v. Comm'r of Soc. Sec., No. 20-CV-502 (AJN) (KHP), 2021 WL 363682, at *9

(S.D.N.Y. Jan. 29, 2021) (collecting cases considering the new regulations and concluding that "the

essence" of the treating physician rule "remains the same, and the factors to be considered in

weighing the various medical opinions in a given claimant's medical history are substantially

similar"), adopted by 2022 WL 717612 (Mar. 10, 2022). "This is not surprising considering that,

under the old rule, an ALJ had to determine whether a treating physician's opinion was supported

by well-accepted medical evidence and not inconsistent with the rest of the record before

controlling weight could be assigned." Acosta Cuevas, 2021 WL 363682, at *9; see also e.g.,

Andrew G., 2020 WL 5848776, at *5 (noting that "consistency and supportability" were the

foundation of the treating physician rule).

<u>Claimant's Credibility</u>

An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court. <u>Osorio v. Barnhart</u>, No. 04-CV-7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006). "[A]s with any finding of fact, '[i]f the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints.'" <u>Id.</u> (quoting <u>Aponte v. Sec'y of Health and Hum. Servs.</u>, 728 F.2d 588, 591 (2d Cir. 1984)). Still, an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." <u>Pena v. Astrue</u>, 2008 WL 5111317, at *10 (S.D.N.Y. Dec. 3, 2008) (quoting <u>Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988)) (internal quotation marks omitted). "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.'" <u>Id.</u> (quoting <u>Mimms v. Heckler</u>, 750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability. <u>Genier</u>, 606 F.3d at 49 (2d Cir. 2010). The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations. <u>Id.</u> First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged. <u>Id.</u>; <u>see also</u> 20 C.F.R. § 416.929(b). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." <u>Id.</u>; <u>see also</u> 20 C.F.R. § 416.929(a). Among the kinds of evidence that the ALJ must consider (in addition to objective medical evidence) are:

> 1. The individual's daily activities; 2. [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, the individual receives or has received for relief

of pain or other symptoms; 6. [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Pena, 2008 WL 5111317, at *11 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (SSA July 2, 1996)).

### B.  The ALJ's Decision

On June 19, 2020, the ALJ issued his decision, R. at 64-83, finding that Plaintiff "has not been under a disability within the meaning of the Social Security Act since June 21, 2018, the date the application was filed," id. at 68. The ALJ began by explaining the five-step evaluation process for determining whether an individual is disabled. Id. at 68-69.

The ALJ found at step one that Plaintiff had "not engaged in substantial gainful activity since the date of his application." Id. at 69. At step two, the ALJ found that Plaintiff had two severe medically determinable impairments—"coronary artery disease status post bypass and arthrosclerosis of the legs with intermittent claudication status post stent placement"—which "significantly limit[ed] the ability to perform basic work activities." Id. The ALJ also noted that Plaintiff had "other" medically determinable impairments—"obesity, left humerus fracture, diabetes, hepatic hemangioma, chronic kidney disease, thoracic spine osteoarthritis" and major depressive disorder—none of which, "either singly or in combination with everything else," represented "more than a minimal limitation" in Plaintiff's ability to perform basic work activities. Id. at 70-71.  The ALJ explained, with reference to Plaintiff's medical records, hearing testimony, and other evidence in the record, his reasoning for finding those "other" medically determinable impairments to be "nonsevere." Id.

In assessing Plaintiff's impairment of major depressive disorder specifically, the ALJ applied evidence in the record to each of the "four broad functional areas" (known as "paragraph

B" criteria), including: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. Id. at 71-72. The ALJ concluded that Plaintiff's "mental impairment" caused no more than a "mild" limitation in any of the functional areas and were "nonsevere" because the evidence did not indicate "more than a minimal limitation" to Plaintiff's ability to do "basic work activities." Id. at 72. Finally, the ALJ noted that at Plaintiff's hearing, he alleged disability due to headaches. Id. The ALJ found that such an impairment was "non-medically determinable," but even if it was, the impairment would be nonsevere. Id.

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, subpart P, appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." Id. at 72. The ALJ discussed in detail Plaintiff's coronary artery disease and arthrosclerosis and explained for both why the severity of the impairment did not meet the corresponding listing. Id. at 73. Prior to proceeding to step four, the ALJ found, "[a]fter careful consideration of the entire record," that Plaintiff maintained "the residual functional capacity to perform the full range of light work as defined in 20 C.F.R 416.967(b)." Id. The ALJ noted that he considered all of Plaintiff's medically determinable impairments, including those that are nonsevere, in assessing Plaintiff's RFC. Id. at 71. The ALJ further explained that in making the RFC finding, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and "also considered the medical opinion(s) and prior administrative medical findings" as required by 20 C.F.R. 416.92(c). Id. at 73-74.

In considering Plaintiff's symptoms, the ALJ followed the established two-step process: (1) determining whether there was an underlying medically determinable physical or mental impairment; and (2) if such an impairment was shown, evaluating the "intensity, persistence, and

limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." Id. at 74. The ALJ analyzed Plaintiff's impairments and, after considering the medical records and other evidence, found that despite the fact that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." The ALJ concluded that Plaintiff maintained the ability to perform light work. Id. at 73-75. The ALJ also independently evaluated each the various medical opinions and prior administrative medical findings, and rendered each opinion "persuasive," "partially persuasive," or "not persuasive," based on an analysis of the "supportability" and "consistency" factors.  Id. at 75-78.

At step four, the ALJ found that Plaintiff had "no past relevant work." Id. at 78. At step five, the ALJ considered Plaintiff's "age, education, work experience, and residual functional capacity," and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Id. Based on the VE testimony at Plaintiff's hearing and the Medical-Vocational Guidelines, the ALJ concluded that a finding of "not disabled" was appropriate because Plaintiff retained the RFC to perform "the full range of light work" and was "capable of making a successful adjustment" to perform certain occupations. Id. at 78-79. Specifically, the ALJ cited the VE's testimony that given Plaintiff's age, education, work experience, and RFC, such an individual would be able to perform work as a: (1) cashier (DOT No. 211.462-010); (2) marker (DOT 209.587-034); and (3) cafeteria attendant (DOT 311.677-010).[6] Id. Accordingly, the ALJ concluded that Plaintiff "has not been under a disability" as defined in Section 1614(a)(3)(A) of the

---

[6] The ALJ also noted that he determined the VE's testimony to be "consistent with the information contained in the Dictionary of Occupational Titles." R. at 79.

Social Security Act, "since June 21, 2018, the date the application was filed." Id. at 79 (citing 20 CFR 416.920(g)).

**C. <u>Analysis</u>**

In support of his motion for judgment on the pleadings, the Commissioner argues that the ALJ's decision applied the correct legal standard and was supported by substantial evidence. <u>See</u> Def.'s Br. at 11-19 (ECF No. 19). A review of the record demonstrates that the Commissioner is correct. The ALJ applied the correct legal standard and did not err in determining Plaintiff's claim for SSI benefits. Further, substantial evidence supports the ALJ's determination that Plaintiff's medically determinable impairments, although severe, did not prevent him from performing the unskilled, light work identified by the vocational expert, and thus did not render him disabled under the Social Security Act. Accordingly, for the reasons set forth below, I recommend that the Commissioner's motion be granted and the ALJ's decision be affirmed.

1.   <u>The ALJ's Evaluation of the Medical Opinions in the Record is Supported by Substantial Evidence</u>

In reaching his determination, the ALJ must consider all medical opinions in the record and evaluate their persuasiveness, considering the factors outlined in the regulations and specifically explaining, in all cases, how he assessed the "supportability" and "consistency" factors. 20 C.F.R. § 416.920c(b)(2); <u>Young,</u> 2021 WL 4148733, at *9. Here, in assessing and determining the weight to afford each opinion, the ALJ considered the relevant evidence in the record, explicitly articulated and described his consideration of the "most important factors" (supportability and consistency), and explained how those factors informed his ultimate findings as to the persuasiveness of each opinion. See <u>id.;</u> <u>Amber H.,</u> 2021 WL 2076219, at *4. As such, the record demonstrates that the ALJ properly weighed the various medical opinions and that his determination was supported by substantial evidence.

24

First, the ALJ properly weighed the September 2018 opinion of the State Agency medical consultant, Dr. Cincore, deeming it "partially persuasive." R. at 75. Dr. Cincore opined that Plaintiff's diabetes and fractured left humorous were not severe impairments and did not present physical limitations. Id. at 171. Regarding supportability, the ALJ explained that the opinion was supported by the record, citing to Plaintiff's consultative examination findings. Id. at 75. As to consistency, the ALJ found the opinion to be consistent with treating physical examination findings of "normal strength, normal sensation, and normal gait." Id. at 75-76. Nevertheless, the ALJ found Dr. Cincore's opinion only partially persuasive because "significant evidence" regarding Plaintiff's "coronary artery disease and arthrosclerosis" was added to the record after Dr. Cincore's opinion had been rendered. Id.

Second, the ALJ properly weighed the opinion of Dr. Salon, who had conducted a consultative examination of Plaintiff in August 2018 and had opined that there were "no objective findings to support the fact that [Plaintiff] would be restricted in his ability to sit or stand, or in his capacity to climb, push, pull, or carry heavy objects." Id. at 76, 363-65. The ALJ explained that the opinion was supported by Dr. Salon's own examination during which Plaintiff demonstrated, among other things, "a normal gait with normal range of motion, normal strength, normal sensation, [and] normal grip strength." Id. at 76, 364. The ALJ further explained that Dr. Salon's opinion was consistent with the evidence in the record of Plaintiff's "normal range of motion, normal strength, normal sensation, and normal gait." Id. at 76. In finding Dr. Salon's opinion to be only partially persuasive, the ALJ reasoned that Dr. Salon's evaluation had taken place in August 2018, before Plaintiff "began to develop arthrosclerosis and coronary artery disease." Id.

Third, the ALJ properly weighed the impairment questionnaire prepared by Dr. Schultzer. Id. at 76. Dr. Schultzer indicated that Plaintiff could occasionally and frequently lift and carry up to 10 pounds; had no impairment in standing, walking, or sitting; had no limitations in understanding

and memory; and had no limitations in his ability to sustain concentration and persistence, social

interaction, and adaptation. Id. at 76, 530. The ALJ credited Dr. Schultzer's opinion that Plaintiff

had no limitations in understanding and memory, ability to sustain concentration and persistence,

social interaction, and adaptation, because it was supported by Dr. Schultzer's own examinations.

Id. at 77. Further, the ALJ explained that the opinion was consistent with other evidence in the

record showing that Plaintiff exhibited "a normal appearance, normal speech, normal eye contact,

normal thought process, normal memory, normal concentration, normal insight and normal

judgment without perceptual abnormalities." Id.

The ALJ further explained that Dr. Schultzer's opinion regarding Plaintiff's ability to stand,

walk, sit, and engage in "manipulative" activities was supported by Dr. Schultzer's own

examinations and was consistent with evidence in the record concerning Plaintiff's "normal gait,

normal strength and normal sensation as well as generally normal perfusion without consistently

significant edema." Id. at 76. However, the ALJ explained that he found Dr. Schultzer's opinion

only partially persuasive because the opinion that Plaintiff should be limited to carrying only 10

pounds or less was not supported by or consistent with the medical evidence. Id. The ALJ

explained that Dr. Schultzer offered no explanation, or citation to any objective evidence, to

support that finding, and the ALJ determined that it was inconsistent with evidence in the record

showing that Plaintiff had a regular heart rate and rhythm, and normal gait, strength, sensation, and

perfusion. Id.

Fourth, the ALJ properly weighed the November 2019 opinion of Dr. Naka, finding his

opinion not persuasive. Id. at 76. The ALJ explained that Dr. Naka's discharge instructions—

recommending that Plaintiff avoid strenuous activity, avoid lifting more than 10 pounds, and walk

as tolerated—were not supported by the record because they were not sufficiently explained. Id.

The ALJ specifically noted that "Dr. Naka rendered these limitations in the acute aftermath" of

Plaintiff's coronary bypass surgery and thus the limitations were "not supported when considering [Plaintiff's] limitations throughout the entirety of the relevant period" or after he had recovered from the surgery. Id. at 76-77. The ALJ also explained, in line with his evaluation of Dr. Schultzer's opinion, that Dr. Naka's instructions were inconsistent with evidence in the record showing that Plaintiff had normal gait, strength, sensation, perfusion, and heart rate and rhythm. Id. at 77.

Fifth, the ALJ properly weighed the opinion of Dr. Brown, the State Agency psychological consultant, finding the opinion to be persuasive. Id. Dr. Brown opined that Plaintiff did not have any severe, medically determinable mental-health impairments. Id. at 172. With respect to supportability, the ALJ explained that Dr. Brown had provided sufficient rationale for his opinion, because Dr. Brown had indicated that Plaintiff's "mental status examination . . . was relatively within normal limits." Id. at 77. With respect to consistency, the ALJ explained that Dr. Brown's opinion was consistent with evidence in the record of Plaintiff's "cooperative nature with a normal appearance, normal speech, normal eye contact, normal thought process, normal memory, normal concentration, normal insight and normal judgment without perceptual abnormalities." Id.

Finally, the ALJ properly weighed the opinion of Dr. Rupp-Goolnick, who performed a psychological consultative examination in August 2018. Id. at 77, 370. In finding Dr. Rupp-Goolnick's opinion that Plaintiff had no mental-health limitations persuasive, the ALJ reasoned that the opinion was supported by Dr. Rupp-Goolnick's own examination, which had found that Plaintiff had a normal appearance, normal eye contact, normal speech, normal thought process, normal concentration, and normal memory, insight, judgment and cognition. Id. at 77. The ALJ also found Dr. Rupp-Goolnick's opinion to be consistent with other mental-health evaluations contained in the record. Id.

In sum, the ALJ's evaluation of the medical opinions in the record is supported by substantial evidence. The ALJ thoroughly explained his reasoning for the weight he accorded each medical opinion and explicitly outlined how he considered the factors of supportability and consistency. To the extent the record before the ALJ contained conflicting evaluations of Plaintiff's condition, it was within the ALJ's province to resolve those conflicts. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); Herrera v. Comm'r of Soc. Sec., No. 20-CV-7910 (KHP), 2021 WL 4909955, at *9 (S.D.N.Y. Oct. 21, 2021) (upholding ALJ's determination which "noted and discussed" conflicting medical evidence and "arrived at a decision based on the record as a whole").

    2.   The ALJ's RFC and Credibility Findings are Supported by Substantial Evidence

As noted previously, an ALJ must evaluate a claimant's RFC (in addition to age, education, and work experience) to determine whether, despite the claimant's limitations, the claimant is able perform work in the national economy. Otherwise stated, the RFC is the "the most [a claimant] can still do despite [his or her] limitations." Genier, 606 F.3d at 49 (citing 20 C.F.R. § 416.945(a)(1)). "When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account . . . [but] may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Id. (citations omitted). Furthermore, the regulations provide a two-step process for evaluating a claimant's assertions of pain: (1) "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged," and (2) "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." Snyder v. Saul, 840 F. App'x 641, 643 (2d Cir. 2021) (citation and internal quotation marks omitted).

In the instant case, the ALJ properly followed this approach and his RFC determination is supported by substantial evidence. The ALJ determined, "[a]fter careful consideration of the entire record," that although Plaintiff's cardiovascular, circulatory, and other impairments imposed significant physical restrictions, Plaintiff "has the [RFC] to perform the full range of light work as defined in 20 CFR 416.967(b)." R. at 73. Light work includes "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and may involve "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b); Rutkowski v. Astrue, 368 F. App'x 226, 230 (2d Cir. 2010). The ALJ thus concluded that Plaintiff had the RFC to perform the full range of light work identified by the VE—specifically, the jobs of cashier, marker, and cafeteria attendant. R. 78-79.

The record supports this determination, notwithstanding Plaintiff's subjective complaints. The ALJ's decision is supported by substantial evidence demonstrating that: (1) following recent heart and blood clot surgeries, Plaintiff's limitations were temporary and his impairments showed improvement over the course of his treatment and recovery; (2) throughout the relevant period, despite Plaintiff's other "nonsevere" impairments, he had maintained basic abilities to walk, stand, sit, lift, and carry, and could perform basic daily activities such as cooking and taking public transportation; and (3) Plaintiff's mental impairments produced only "mild" or "minimal" limitations to Plaintiff's ability to do basic activities.

First, the ALJ's decision reflects that he considered Plaintiff's subjective complaints concerning his recent surgeries, but, based on the record as a whole, determined that Plaintiff had responded to treatment and was relatively mobile and functional after his recovery from those surgeries. At Plaintiff's January 2020 hearing, he informed the ALJ about his recent heart surgery and surgeries for blood clots in his legs. R. at 128, 130. Plaintiff testified that his cardiologist had advised that he should not lift more than 10 pounds. Id. at 149-51, 153-54. The ALJ acknowledged

that Plaintiff's recent cardiac issues had required heart surgery, but explained, citing to the record, that Plaintiff had "progressed well during hospitalization and did not show repeat decompensation after discharge." Id. at 74, 78. And as previously discussed, in considering Dr. Naka's discharge instructions following the surgery, the ALJ explained that the limitations indicated by Dr. Naka were rendered in "the acute aftermath" of Plaintiff's coronary bypass surgery and were "not supported" when considering "the entirety of the relevant period" or the period after Plaintiff's recovery. Id. at 76-77.  Plaintiff also testified at the hearing that due to the circulatory issues in his legs, he cannot stand for longer than 10 to 15 minutes or walk for more than "a block or so" without pain. Id. at 149-51. The ALJ acknowledged Plaintiff's circulatory impairment and recent blood clot surgeries, but found that he had "responded well to treatment and regained functional capacity without [the] need for significant physical therapy." Id. at 74-75, 78.

Thus, the ALJ determined that while these medically determinable severe impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Id. at 74. As described above, the ALJ's decision demonstrates that he identified "specific record-based reasons" to support that determination, including the frequency and intensity of Plaintiff's symptoms, his improvement with medication and treatment, and findings from multiple physical examinations showing Plaintiff's ability to engage in basic functions such as sitting, standing, walking, and performing basic daily activities. Id. at 74-76; See Reices-Colon v. Astrue, 523 F. App'x 796, 799 (2d Cir. 2013) (affirming decision where substantial evidence supported the ALJ's finding that the Plaintiff showed improvement following treatment); see also Hollaway v. Colvin, No. 14-CV-5165 (RA) (HBP), 2016 WL 96172, at *17 (S.D.N.Y. Jan. 8, 2016), report and recommendation adopted, 2016 WL 1275658 (S.D.N.Y. Mar. 31, 2016) (finding the ALJ made a proper credibility determination

and that the "ALJ did not completely reject plaintiff's complaints of pain or physical limitations, but rather found that given the overall record, plaintiff's medically determinable impairments would allow for the performance of 'a limited range of light work'").

Second, the ALJ's decision reflects that, in addition to Plaintiff's coronary and circulatory impairments, the record as a whole demonstrates that Plaintiff's "nonsevere" impairments did not limit his ability to perform basic functions and daily activities. At the hearing, Plaintiff testified that various other impairments prevented him from being able to work, including his diabetes, high blood pressure, back pain, kidney problems, and liver problems. Id. at 144-45. Plaintiff testified that his diabetes and hypertension caused him headaches and the need to use the bathroom often. Id. at 146-48, 157. Plaintiff also testified that his upper back pain caused him to have trouble lifting and carrying things. Id. at 151-53. The ALJ explicitly noted this testimony in his decision. Id. at 74.

But despite these subjective statements, the ALJ cited Plaintiff's medical records and prior examinations that demonstrated normal gait, normal strength, normal grip, normal sensation, regular heart rate and rhythm, and generally normal perfusion without consistently significant edema. See id. at 74-75, 78. Moreover, the ALJ explained that there existed no objective findings to support that Plaintiff would be restricted in his ability to walk, sit, and stand. See id. at 76, 78. Here, the ALJ "identified specific record-based reasons for his ruling," and thus his credibility finding, which is supported by substantial evidence, should not be second-guessed. Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010); see also Aponte, 728 F.2d at 591-92 (holding an ALJ is entitled to find a claimant not credible if his testimony contradicts the record, and a court must uphold the ALJ's rejection of a claimant's subjective complaints of pain "[i]f the [ALJ's] findings are supported by substantial evidence."). In addition, the ALJ also explained that evidence in the record supported Plaintiff's ability to perform basic daily activities such as cooking, shopping, travelling, bathing, showering, managing money, doing laundry, and grooming himself.

31

See id. at 74-75, 78. Courts have found that a claimant's ability to perform similar basic activities can properly support an ALJ's determination that the claimant has an RFC to perform light work. See, e.g., Cichocki v. Astrue, 729 F.3d 172, 178 (2d Cir. 2013); Williams v. Colvin, No. 15-CV-4173 (ALC), 2016 WL 3034494, at *7 (S.D.N.Y. May 26, 2016); Browne v. Comm'r of Soc. Sec., 131 F. Supp. 3d 89, 101 (S.D.N.Y. 2015); Simmons v. Colvin, No. 13-CV-1724 (KBF), 2014 WL 104811, at *5 (S.D.N.Y. Jan. 8, 2014).

Finally, the ALJ considered Plaintiff's alleged mental impairments in evaluating Plaintiff's RFC—including "[Plaintiff]'s medically determinable mental impairment of major depressive disorder." R. at 71. The ALJ acknowledged Plaintiff's subjective complaints about his depression and anxiety but found that these impairments were "nonsevere" because they imposed no more than "minimal limitation" in Plaintiff's ability to "perform basic mental work. Id. The ALJ's decision references Plaintiff's hearing testimony where Plaintiff testified that his "anxiety and depression" had "caused forgetfulness and made it difficult for him to complete tasks." Id. at 74. Furthermore, the ALJ's decision notes that Plaintiff reported, among other things, poor memory, concentration, sleep, and appetite, as well as racing thoughts, difficulty completing tasks, and "anxiety, tearfulness, sadness, and social isolation." Id. at 71-72. The ALJ also recognized that on at least one occasion, Plaintiff showed "rapid speech," "impaired concentration," "mildly impaired judgment," and "tangential thought process and ruminative thought content," and at times "displayed an anxious/depressed mood." Id.

In considering the relevant medical evidence in the record concerning Plaintiff's mental impairments, and applying the "paragraph B" criteria evaluating mental disorders under the regulations, the ALJ explained that throughout the relevant time period: (1) Plaintiff's mental status examinations detailed normal memory, normal intelligence, normal thought-process, normal insight, normal judgment, and normal cognition, as well as a cooperative nature with normal

32

appearance, normal eye contact, and normal speech; (2) the record contained "no persistent or ongoing complaints" and "showed  no consistent objective findings" of memory loss, trouble understanding, or "distractibility"; and (3) Plaintiff "did not require inpatient hospitalization or intensive outpatient therapy." Id. at 71-72. The ALJ also noted that Plaintiff enjoyed reading, denied having problems getting along with others, and maintained the ability to perform basic daily activities (e.g., cooking, shopping, doing laundry, and grooming himself). Id. at 72.

Thus, the ALJ determined that Plaintiff's "medically determinable mental impairment cause[d] no more than 'mild' limitation" and the record evidence did not indicate more than "a minimal limitation to [Plaintiff]'s ability to do basic work activities." Id. at 71-72. Courts have similarly found that mild or moderate mental limitations are consistent with the ability to perform light, unskilled work, as the ALJ found here. See Whipple v. Astrue, 479 F. App'x. 367, 370 (2d Cir. 2012) (findings that plaintiff's depression caused only moderate limitations in social functioning supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks); Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (finding that an RFC determination for unskilled work is not inconsistent with moderate mental limitations). Ultimately, the ALJ's finding that Plaintiff's RFC enabled him to perform light work appropriately accounted for the mild limitations imposed by Plaintiff's mental impairments and was supported by substantial evidence.

At the hearing, the VE testified that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 163, 78-79. The VE used the Dictionary of Occupational Titles to opine that Plaintiff could work as a cashier, marker, or cafeteria attendant, all of which are jobs that exist in significant numbers in the national economy. Id. The ALJ properly relied on the VE's testimony regarding this issue. See Browne, 131 F. Supp. 3d at 101 (concluding that ALJ could properly rely on VE's testimony regarding the existence of jobs in

national economy which a person with the claimant's RFC could perform); <u>Santos v. Comm'r of Soc. Sec.</u>, No. 11-CV-7278 (KBF), 2013 WL 5883345, at *7 (S.D.N.Y. Oct. 28, 2013) (finding that the VE's "testimony provided the ALJ with substantial evidence to support his determination that plaintiff would be able to perform . . . the unskilled light jobs of fast food worker and cashier, of which there were significant numbers in the economy.")

Ultimately, the ALJ is "is not required to accept the claimant's subjective complaints without question"; he is permitted to discount Plaintiff's testimony and subjective statements based on the record as a whole. <u>See Genier</u>, 606 F.3d at 49 (citations omitted). The ALJ appropriately did so here, and for the reasons provided above, his final determination with respect to Plaintiff's credibility and his finding that Plaintiff could perform light work was supported by substantial evidence. <u>See Johnson</u>, 563 F. Supp. 2d at 454 (S.D.N.Y. 2008) (holding that "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld").

## <u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that the Commissioner's motion for judgment on the pleadings be **GRANTED**.

DATED:       August 12, 2022
                    New York, New York

Respectfully submitted,

VALERIE FIGUEREDO
United States Magistrate Judge

Copies to:

Guillermo Estevez
260 Audbon Ave.
Apt. 8C
New York, NY 10033

All counsel (via ECF)

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to Judge Failla. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**

35